<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| ORLANDO BARRETT, | : | |
| | : | |
| Petitioner, | : | Civil No. 06-1790 (KSH) |
| | : | |
| v. | : | |
| | : | **O P I N I O N** |
| ALFARO ORTIZ, et al., | : | |
| | : | |
| Respondents. | : | |

---

**APPEARANCES:**

      ORLANDO BARRETT, #437730 SBI 985799B
      East Jersey State Prison
      Rahway, New Jersey  07065
      Petitioner <u>pro se</u>

      PAULA T. DOW, Prosecutor, Essex County
      GARY A. THOMAS, Assistant Prosecutor
      Attorneys for Respondents

<u>**HAYDEN**</u>, District Judge

On April 18, 2006, petitioner ORLANDO BARRETT filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254(a), clarified by petitioner's supplemental letter filed on June 7, 2006, challenging a judgment of conviction in the Superior Court of New Jersey. <u>See</u> Docket Entry No. 1. On August 24, 2006, this Court advised petitioner about his rights under <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), <u>see</u> Docket Entry No. 4, and, on November 28, 2006, this Court directed respondents to file an answer to petitioner's petition. <u>See</u> Docket Entry No. 2. On

February 1, 2007, respondents filed their answer urging this Court
to deny the petition on the merits and as time barred. <u>See</u> Docket
Entry No. 11.

**<u>BACKGROUND</u>**

Petitioner challenges a judgment of conviction filed on July
19, 2002, in the Superior Court of New Jersey, Law Division, Essex
County, after a jury convicted him of manslaughter, unlawful
possession of a weapon and possession of a weapon for an unlawful
purpose. <u>See</u> Pet. ¶¶ 2, 4. On October 20, 2003, petitioner
appealed his conviction to the Superior Court, Appellate Division
by filing a brief, executed by Public Defender Yvonne Smith Segars,
with Alison Perrone acting as Designated Counsel joining on the
brief, alleging that the trial court erred in not granting him
judgement of acquittal and that the imposition of consecutive
sentences for manslaughter and for unlawful possession of a weapon
contradicted the state law annunciated in <u>State v. Yarbough</u>, 100
N.J. 627 (1985). <u>See</u> <u>State v. Barrett</u>, A-667-03T4, at 6, 12 (Oct.
20, 2003). In addition, petitioner's brief asserted that the trial
court abused its discretion in sentencing him to a ten-year term
with 85% period of parole ineligibility on his manslaughter
conviction and to a five-year term on his unlawful possession of a
weapon conviction. <u>See</u> <u>id.</u> at 9-11 (relying on state law, as it
was set forth in <u>State v. Gardner</u>, 113 N.J. 510 (1989); <u>State v.
Hodge</u>, 95 N.J. 369 (1984); and <u>State v. Martelli</u>, 201 N.J. Super.

2

378 (App. Div. 1985)).  On August 4, 2004, while petitioner's appeal was still pending with the Appellate Division, he filed a letter with the Appellate Division "call[ing] the court's attention to the . . . United States Supreme Court decision in <u>Blakely v. Washington</u>, [542 U.S. 296] (2004)" and moving the Appellate Division for leave to file a supplemental brief addressing the <u>Blakely</u> issue.  <u>See</u> Letter Executed by Designated Counsel Alison Perrone, with Cover Letter by Helen C. Godby, Assistant Deputy Public Defender (hereinafter "Public Defender's Letter").  In response to the Public Defender's Letter, the Appellate Division granted petitioner leave to file a supplemental brief.[1]  <u>See</u> <u>State v. Barrett</u>, A-667-03T4 (Aug. 24, 2004).  Petitioner's supplemental brief alleged that the "imposition of [petitioner's enhanced] terms above the presumptive [terms] violated [petitioner's] constitutional rights" and based the argument on the Supreme Court's holding in <u>Blakely</u>, 542 U.S. 296 (holding that, with narrow exceptions, a criminal sentence cannot be enhanced by a finding made by a judge rather than a jury).

---

[1]

The date of petitioner's supplemental brief cannot be established from the record provided by the parties to this Court. The supplemental brief is designated as item number 5 in the list of exhibits attached to respondents' answer and carries a cover letter with Alison Perrone's letterhead, the state action caption and a sentence reading "Your Honors: This supplemental letter is submitted in lieu of a supplemental formal brief . . . ."

On January 11, 2006, the Superior Court of New Jersey, Appellate Division, issued an opinion affirming petitioner's conviction.  <u>See</u> <u>State v. Barrett</u>, A-667-03t4 (N.J. Super. App. Div. Jan 11, 2005).  Addressing petitioner's <u>Blakely</u> argument, the panel stated as follows:

> we reject [petitioner's] argument that the imposition of sentences above the presumptive [maximum] by the trial judge infringed on his right to a jury trial or his due process rights under <u>Blakely</u>, . . . finding that the factors upon which the [trial] court relied in setting [petitioner's] sentence fall within the recidivism exception outlined in <u>Blakely</u> . . . because they derive from [petitioner's] criminal record.

<u>Id.</u> at 13-14 (citations omitted).  Petitioner's application to the New Jersey Supreme Court for certification was denied on April 8, 2005.  <u>See</u> <u>State v. Barrett</u>, 183 N.J. 257 (2005).  Petitioner did not seek certification from the United States Supreme Court and did not file an application for post-conviction review.[2]

Petitioner now raises four challenges, the fourth of which asserts that the "imposition of . . . terms above the presumptive [terms] violated [petitioner's] constitutional rights [under the holding of] <u>Blakely v. Washington</u> [and] <u>State v. Natale</u>," 184 N.J.

---

[2]

It appears that Petitioner holds an erroneous belief that he could *either* seek certification from the United States Supreme Court *or* petition this Court for a writ of habeas corpus.  <u>See</u> Letter ("I have [two] options I may pursue on my own: 1. Petition for certification, and 2. Petition for habeas corpus.  I pick habeas corpus").  Petitioner errs.  Petitioner's right to seek certification from the United States Supreme Court or to seek a post-conviction review is independent from and no way incompatible with Petitioner's right to seek a writ of habeas corpus.

4

458, 494 (2005), a decision applying <u>Blakely</u> to New Jersey's sentencing regime.  Pet. ¶ D; <u>accord</u> Letter.  While admittedly inartfully drafted, petitioner's submissions unambiguously indicate that he challenges, <u>inter alia</u>, his trial court's discretion to impose enhanced sentences above the presumptive terms that were in existence at the time of his sentencing.  <u>See</u> <u>id.</u> Respondents, however, either misread petitioner's <u>Blakely</u> claim as a challenge to the trial court's discretion to impose consecutive sentences,[3] <u>see</u> Ans. at 13 ("the decision to impose consecutive sentences does not trigger the same . . . considerations that underlay <u>Blakely</u> and <u>Natale</u>), or allege that the petition should be denied on the merits and time barred.  <u>See</u> <u>id.</u> at 15-17.

**DISCUSSION**

**I.    <u>Petition Is Not Time Barred</u>**

     Respondents assert, as an affirmative defense, that "Petitioner's application for a writ of habeas corpus is [time] barred."  Ans. at 15.  Respondents clarify their calculations as follows:

> [P]etitioner's judgement of conviction became final on April 8, 2005, the date when the New Jersey Supreme Court denied certification to [petitioner's challenge to the] Appellate [D]ivision['s decision].  Pursuant to 28 U.S.C. § 2244(d), . . . petitioner had until April 8, 2006, to

---

[3]

     Respondents' confusion might be justified in view of petitioner's habitual conflation of his challenges related to the imposition of consecutive sentences and those related to the presumptive term.

5

file the instant petition. . . . In the case at bar[,
petitioner] did not file his petition until April 18,
2006. [Therefore,] petitioner missed his deadline by ten
days.

Id. at 15-16.  Respondents err in their calculation.

On April 24, 1996, Congress enacted the Anti-Terrorism and
Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-
year period of limitation shall apply to an application for a writ
of habeas corpus by a person in custody pursuant to the judgment of
a State court."  28 U.S.C. § 2244(d)(1).  For the purposes of
Petitioner's Application, the limitations period runs from "the
date on which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such review."  28
U.S.C. § 2244(d)(1).  Thus, "[i]f a defendant does not pursue a
timely direct appeal to the court of appeals, his or her conviction
and sentence become final, and the statute of limitation begins to
run, on the date on which the time for filing such an appeal
expired."  Kapral v. United States, 166 F.3d 565, 577 (3d Cir.
1999).

It follows that a state-court criminal judgment becomes
"final" within the meaning of §2244(d)(1) by the conclusion of
direct review which involve all levels of the State court or by the
expiration of time for seeking the next level of such review,
including the 90-day period for filing a petition for writ of

6

certiorari in the United States Supreme Court.[4]  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.  Consequently, since the New Jersey Supreme Court denied petitioner certification on April 8, 2005, he had 90 days to file a petition for writ of certiorari in the United States Supreme Court.  Since petitioner did not file such application, his limitations period began to run 90 days after April 8, 2005, that is, on July 7, 2005, and expired one year later, that is, on July 6, 2006.

Since petitioner filed his petition on April 18, 2006, his filing was timely and preceded expiration of his limitations period by eighty days.  Therefore, respondents' affirmative defense has no merit.

## II.  <u>Petitioner's Limitations Period Is Currently Expired</u>

The statute of limitations under § 2244(d) is subject to tolling exception(s), that is, statutory tolling and, perhaps,

---

[4] In <u>Lawrence v. Florida</u>, 127 S. Ct. 1079 (2007), the Supreme Court held that 28 U.S.C. § 2244(d)(2), which tolls the Antiterrorism and Effective Death Penalty Act's one-year statute of limitations for seeking federal habeas corpus relief while a "properly filed application for State post-conviction relief or other collateral review" is pending, does *not* toll the statute of limitations during the pendency of the inmate's petition for certiorari seeking review of the denial of State post-conviction relief.  This decision did not change the well-established rule that a conviction does not become final until the period for filing a petition for certiorari with the United States Supreme Court expires.

equitable tolling.[5] See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617-18 (3d Cir. 1998).  Section 2244(d)(2) requires statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  However, the statute of limitations is *not* tolled under § 2244(d)(2) for the time during which a habeas petition is pending in a federal court.  See Duncan v. Walker, 533 U.S. 167, 181-82 (2001) (explaining that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and, thus, does "not toll the limitation period during the pendency of respondent's first federal habeas petition"); Slutzker v. Johnson, 393 F.3d 373, 382 (3d Cir. 2004); see also Rhines v. Weber, 544 U.S. 269, 274-75 (2005)(declaring that "the filing of a petition for habeas corpus in federal court does not toll the statute of limitations"); Jones v. Morton, 195 F.3d 153, 158 (3d Cir. 1999).

Since petitioner did not file an application for State post-conviction review but rather filed his instant petition,

---

[5]

     Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814, n.8 (2005) ("We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations").

petitioner's limitations period was not statutorily tolled, and his filing of the instant petition did not affect the expiration date of his limitations period, that is, July 6, 2006.

Presuming that the AEDPA statute of limitations is subject to equitable tolling, see Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998), "a litigant seeking equitable tolling [would] bear[] the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  The Third Circuit instructs that equitable tolling could be appropriate only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised reasonable diligence in attempting to investigate and bring his claims."  LaCava v. Kyler, 398 F.3d 271, 275-76 (3d Cir. 2005).  Mere excusable neglect is not sufficient.[6]  See id.; see also Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999).  Extraordinary circumstances have been found where (1) the

---

[6]
A claim of "ineffective assistance of counsel" does not provide a basis for equitable tolling.  See Pace, 511 U.S. at 419 n.9 (dismissing the "ineffective assistance of counsel" excuse offered by the petitioner who asserted "that he received ineffective assistance of counsel at 'all levels of representation'" ).

9

respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim.  See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).  Moreover, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

Petitioner's instant application is silent as to any extraordinary circumstances that took place between July 7, 2005, and July 6, 2006.  Therefore, this Court has no grounds to consider granting petitioner equitable tolling and concludes that, as of July 6, 2006, petitioner's period of limitations expired barring him from an opportunity to withdraw his instant petition and file another § 2254 application instead, at a later date.

III. **Exhaustion of State Remedies**

Exhaustion of state remedies has been required for more than a century, since the Supreme Court's decision in Ex parte Royall, 117 U.S. 241 (1886). The exhaustion doctrine was first codified at 28 U.S.C. § 2254 in 1948, see Rose v. Lundy, 455 U.S. 509, 516-18 (1982), and more recently was the subject of significant revisions in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132, 110 Stat. 1217 (April 24, 1996). The exhaustion requirement is intended to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism. Granberry v. Greer, 481 U.S. 129 (1987); Rose v. Lundy, 455 U.S. 509, 516-18 (1982). Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review. Rose, 455 U.S. at 519.

The exhaustion doctrine is a "total" exhaustion rule. That is, "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims [('mixed' petitions)]." Lundy, 455 U.S. at 522. Therefore, a district court may not grant a writ of habeas corpus under § 2254 unless the petitioner has exhausted state court remedies for all grounds presented in the petition at every level of the State court or such process is unavailable or ineffective to protect the petitioner's rights. See 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B); Rhines v. Weber, 544 U.S. 269 (2005);

Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997); see also Duckworth v. Serrano, 454 U.S. 1, 3 (1981).  Section 2254(b) provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)(A) & (B); see also Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998); Lambert, 134 F.3d at 513; Toulson, 987 F.2d at 987-89.  Section 2254(c) further provides that "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

Federal courts have consistently adhered to the exhaustion doctrine "for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." Picard v. Connor, 404 U.S. 270, 275 (1971) (citations and internal quotation marks omitted).  The

12

statutory scheme under the AEDPA "reinforces the importance of Lundy's 'simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken *each one* to state court.'" Rhines, 544 U.S. at 276-77 (quoting Rose v. Lundy, 455 U.S. 509, 520 (1982)) (emphasis supplied).

Moreover, a petition containing claims which are unexhausted but procedurally barred will not be dismissed as unexhausted.[7] The Court of Appeals for the Third Circuit guided that, "exhaustion is [presumed] not possible [only if] the state court . . . find[s] the claims procedurally defaulted" and a state court review is, therefore, unavailable. Toulson, 987 F.2d at 987; accord Coleman v. Thompson, 501 U.S. 722, 730-32 & n.1 (1991); Harris v. Reed, 489 U.S. 255 (1989). In determining whether state court review is

---

[7]

"If a claim has not been fairly presented to the state courts but state law clearly forecloses review . . . exhaustion is excused." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002) (citations omitted). While it excuses exhaustion, the doctrine of procedural default is a double-edged sword. When a petitioner's failure to comply with a state procedural rule has prevented the state courts from reaching the merits of his federal claims, federal habeas review of those claims is ordinarily barred as petitioner has procedurally defaulted his claims. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991). Reliance by the last State court to consider the federal claim on an "adequate and independent finding of procedural default will bar federal habeas review of [that] federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice' attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris, 489 U.S. at 262; see also Cabrera v. Barbo, 175 F.3d 307, 312-14 (3d Cir. 1999).

13

"available" under § 2254(b)(1)(B) and (c), this Court must "turn [its] attention to the actuality that the state courts would refuse to entertain" the petitioner's federal claims.[8]  *Lambert*, 134 F.3d at 516; *Christy*, 115 F.3d at 207.  Most importantly, "unless [an actual] state court decision exists indicating that a habeas petitioner is clearly precluded from state court relief, the federal habeas claim should be dismissed for non-exhaustion, even if it appears unlikely that the state will address the merits of the petitioner's claim."  *Lambert*, 134 F.3d at 517.

For example, the petitioner in *Toulson v. Beyer*, 987 F.2d 984 (3d Cir. 1993), was a New Jersey prisoner who filed a § 2254 petition in the District Court for the District of New Jersey challenging his state conviction and sentence on five grounds.  The Appellate Division of the New Jersey Superior Court had affirmed his conviction; the New Jersey Supreme Court had denied his petition for certification; and the trial court had denied his motion to reconsider the sentence and his motion for post-conviction relief.  Toulson had not presented three of his § 2254

---

[8]

Failure to exhaust may also be excused where "circumstances exist that render [State corrective] process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(ii).  State corrective process is ineffective where "'state remedies are inadequate or fail to afford a full and fair adjudication of the federal contentions raised, or where exhaustion in state court would be futile.'"  *Lambert*, 134 F.3d at 516 (quoting *Christy v. Horn*, 115 F.3d 201, 207 (3d Cir. 1997)); *see also* *Gibson*, 805 F.2d at 138.

grounds to the New Jersey Supreme Court in his petition for certification. The district court held that the claims were procedurally barred by N. J. Ct. R. 3:22-4 (barring consideration of grounds not raised in prior proceedings), in that Toulson had not raised them in his petition for certification to the New Jersey Supreme Court. The Third Circuit reversed and remanded, observing that Rule 3:22-4(c) dissolves the procedural bar where "denial of relief would be contrary to the Constitution of the United States or the State of New Jersey," and that other rules presenting potential procedural bars were likewise subject to relaxation.[9] The Third Circuit instructed the district court to dismiss the petition without prejudice for failure to exhaust "[b]ecause no state court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not clearly require a finding of default." Toulson, 987 F.2d at 989; compare Cabrera v. Barbo, 175 F.3d 307, 312-314 (3d Cir. 1999) (affirming dismissal of claims as procedurally defaulted after a New Jersey

---

[9] New Jersey Court Rule 3:22-12, which poses a five-year limitation period for the filing of post-conviction relief petitions, Rule 3:22-4, which bars any ground for relief not raised in a prior post-conviction relief proceeding, and Rule 3:22-5, which provides that a prior adjudication upon the merits of any ground for relief is conclusive, are subject to relaxation. See State v. Preciose, 129 N.J. 451, 454, (1992); State v. Mitchell, 126 N.J. 565 (1992); State v. Johns, 111 N.J. Super 574, 576 (App. Div. 1970).

court had *in fact refused* to consider the petitioner's federal claims because they were procedurally barred).

The procedural history of petitioner's state claims unambiguously indicates that his <u>Blakely</u> claim was not presented to every level of the State court. Petitioner's <u>Blakely</u> claim was raised only to the Appellate Division and to the New Jersey Supreme Court. Petitioner, however, did not present his claim to the Law Division. Consequently, petitioner's failure to exhaust his <u>Blakely</u> claim by properly presenting it to every level of the State court renders his petition "mixed" and, thus, obligates this Court to dismiss the petition without prejudice as unexhausted, <u>see</u> <u>Lundy</u>, 455 U.S. at 522, especially in view of the fact that State post-conviction review is still available to petitioner, <u>see</u> N.J. Court Rules 3:22-12 and 3:22-4, and the implied adjudication on merits at the higher court bar ensuing from <u>State v. Barrett</u>, A-667-03t4 (N.J. Super. App. Div. Jan 11, 2005), is subject to relaxation. <u>See</u> <u>Preciose</u>, 129 N.J. at 454; <u>Mitchell</u>, 126 N.J. 565; <u>Johns</u>, 111 N.J. Super at 576.

**IV. <u>Stay-and-Abeyance</u>**

The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions, <u>see</u> 28 U.S.C. § 2244(d), however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'" <u>Crews v. Horn</u>, 360 F.3d 146, 151 (3d Cir. 2004) (quoting <u>Zarvela v. Artuz</u>, 254 F.3d 374, 379 (2d

16

Cir.), <u>cert. denied</u>, 534 U.S. 1015 (2001)).  Because of the one-year limitations period, dismissal of a timely-filed mixed petition may forever bar a petitioner from returning to federal court. "Staying a habeas petition pending exhaustion of state remedies is a permissible and effective way to avoid barring from federal court a petitioner who timely files a mixed petition." <u>Crews</u>, 360 F.3d at 151.  Indeed, the Court of Appeals for the Third Circuit has held that "when an outright dismissal could jeopardize the timeliness of a collateral attack, a stay is the only appropriate course of action." <u>Crews</u>, 360 F.3d at 154.

The Supreme Court set forth the limitations of the stay-and-abeyance rule in <u>Crews</u>.

> [S]tay and abeyance should be available only in limited circumstances. . . . [S]tay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.
>
> . . . .
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.  In such circumstances, the district court should stay, rather than dismiss, the mixed petition. . . .  For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted

claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

Notably, even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations. "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." Id. at 278. See also Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court. If a petitioner fails to meet either time-limit, the stay should be vacated nunc pro tunc").

With the above-stated Supreme Court's guidance in mind, this Court now turns to petitioner's Blakely claim in order to establish whether an application of the stay-and-abeyance rule would be appropriate in the case at bar.

## V.   Petitioner's *Blakely* Claim

The Rhines Court held that a district court has the authority to stay a mixed petition when a stay would be compatible with AEDPA's purposes, Rhines, 544 U.S. at 276, observing that grant of a stay is proper "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and

18

there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 278.

Since, in this case, petitioner did not present his Blakely claim to the Law Division on direct appeal because the Supreme Court did not decide Blakely until after the Law Division entered petitioner's judgment of conviction, this Court finds that petitioner had good cause within the Rhines standard for his failure to exhaust his Blakely claim. In addition, there is no indication that petitioner engaged in intentionally dilatory litigation tactics.

This Court also finds that petitioner's Blakely claim is potentially meritorious within the Rhines standard. Petitioner was convicted of manslaughter, a second degree crime, N.J.S.A. 2C:11-4b(2); unlawful possession of a weapon, a third degree crime, N.J.S.A. 2C:39-5b; and possession of a weapon for an unlawful purpose, a second degree crime, N.J.S.A. 2C:39-4a. See State v. Barrett, A-667-03T4, at 1-2 (N.J. Super. App. Div. Jan 11, 2005). When petitioner was convicted and sentenced, New Jersey law provided that a court "shall impose" the presumptive sentence of seven years for a crime of the second degree and four years for a crime of the third degree, "unless the preponderance of aggravating or mitigating factors . . . weigh in favor of a higher or lower term within the limits provided in N.J.S.A 2C:43-6." N.J.S.A. 2C:44-1f(1)(c) and (d). Under the statute, the trial court could

19

increase the sentence to between five and 10 years for a second degree crime and between three and five years for a third degree crime only if the court found a preponderance of aggravating factors.[10]   See N.J.S.A. 2C:43-6a(2) and (3).

In this case, the State court record shows that the trial judge increased petitioner's sentence above the presumptive terms to ten years (on the second degree manslaughter conviction) and to five years (on the consecutive third degree unlawful possession of a weapon conviction) after "finding sufficient support for the [trial] court's determination in [petitioner's] very extensive criminal history [reflecting] the escalation in seriousness of his crimes, and the senselessness of [the victim's] death.'"   State v. Barrett, A-667-03T4, at 10-11 (N.J. Super. App. Div. Jan 11, 2005).

The foregoing indicates that petitioner's trial judge increased his sentence above the presumptive terms upon finding the presence of an aggravating factor 2C:44-1a(6), that is, the "exten[siveness] of [petitioner's] prior criminal record and the seriousness of the offenses of which [petitioner] has been convicted."   N.J.S.A. 2C:44-1a(6).   Alternatively, the foregoing

---

[10]

Respondents appear to suggest that the presumptive term must mean the maximum term allowed under the applicable criminal provision.   See Ans. at 910.   This argument is erroneous.   See Cunningham v. California, 127 S. Ct. 856 (2007) (examining California Penal Code regime similar to that employed by New Jersey and concluding that the middle term used to be the "statutory maximum" because it was the maximum sentence that could be imposed based on the jury's verdict alone).

may indicate that the trial judge increased petitioner's sentence above the presumptive terms upon finding aggravating factors (3), (6), and (9), that is, "[t]he risk that the defendant will commit another offense;" "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted;" and "[t]he need for deterring the defendant and others from violating the law." See N.J.S.A. 2C:44-1a(3), (6), (9). The Appellate Division found a usage of such aggravating factors correct, see State v. Barrett, A-667-03T4, at 13-14 (N.J. Super. App. Div. Jan 11, 2005), and respondents now quote the Appellate Division's conclusion in support of their contention that the imposition of sentences above the presumptive term on the basis of petitioner's trial judge's consideration of his previous criminal record does not violate the holding of Blakely.[11]  See Ans. at 13-14.

The Appellate Division's opinion and respondents' contentions appear to be inconsistent with the United States Supreme Court's holding in Blakely and the current law of the State of New Jersey. The New Jersey Supreme Court applied the Blakely holding in State v. Natale, 184 N.J. 458, 494 (2005), "to defendants with cases on

---

[11]

It appears that the Appellate Division might have found that petitioner's trial court correctly raised his sentences above the presumptive term on the basis of his criminal record by misapplying the holding of Almendarez-Torres v. United States, 523 U.S. 224 (1998). See State v. Barrett, A-667-03T4, at 13-14 (N.J. Super. App. Div. Jan 11, 2005).

direct appeal as of the date of this decision and to those defendants who raised _Blakely_ claims at trial or on direct appeal," _id._, and rejected the argument that aggravating factors (3), (6), and (9) fall within the recidivism exception in _State v. Thomas_, 188 N.J. 137, 153-54 (2006).   The New Jersey Supreme Court explained as follows:

> We see no reason now to risk constitutional error by straining to interpret which past sentencing decisions utilizing factors (3) and (9) fit within our best prediction of how far we may stretch the presently allowed prior-conviction exception.   Rather, it is more prudent, constitutionally, to construe narrowly the "facts" that _Blakely_'s prior-conviction exception permits a sentencing court to consider.   Therefore, we hold that judicial fact-finding must be limited to the finding of the existence of a prior conviction.   For defendants sentenced prior to _Natale_, we have no confidence that any who were sentenced above the presumptive sentence on the basis of aggravating factors (3), or (6), or (9) were sentenced exclusively on the mere judicial fact-finding of the existence of a prior conviction.
>
> Indeed, implicit in a sentencing court's assessment of the defendant's risk of recidivism (factor (3), the seriousness and extent of a defendant's prior criminal record (factor (6)), and the need to deter defendant and others (factor (9)) is a qualitative assessment that we want and expect the court to make. A court's findings assessing the seriousness of a criminal record, the predictive assessment of chances of recidivism, and the need to deter the defendant and others from criminal activity, do all relate to recidivism, but also involve determinations that go beyond the simple finding of a criminal history and include an evaluation and judgment about the individual

in light of his or her history . . . . Indeed,
it cannot be disputed that aggravating factors
(3) and (9) at issue here can be based on
assessment of a defendant beyond the mere fact
of a prior conviction, or even in the absence
of a criminal conviction . . . . Our <u>Natale</u>
remedy will continue to permit such
qualitative assessments by sentencing courts
in finding aggravating factors (3), (6), and
(9) going forward. We decline to take an
artificial or crabbed view of judicial
determinations made about those same
aggravating factors now, merely to avoid
affording to persons such as defendant the
opportunity to have his sentence re-
determined.

In conclusion, we hold that a remand for
defendant's re-sentencing is required. In
accordance with <u>Natale</u>, <u>supra</u>, the court
should re-determine defendant's sentence
within the extended-term range based on
aggravating and mitigating factors found to be
present . . . . In balancing those factors,
the court shall not be required to start from
the fixed point of the previously applicable
statutory presumptive sentence for the
extended-term range.

<u>Thomas</u>, 188 N.J. at 153-54.

Given the New Jersey Supreme Court's interpretation of

aggravating factors (3), (6), and (9) in <u>Thomas</u>, this Court finds

that petitioner's <u>Blakely</u> claim is potentially meritorious under

the <u>Rhines</u> standard. A stay of the petition, therefore, appears to

be warranted while petitioner seeks a post-conviction review with

the State court in order to exhaust his <u>Blakely</u> claim. <u>See</u> <u>Gerrard</u>

<u>v. Parrish</u>, 2007 U.S. Dist. LEXIS 3374 (D.N.J. Jan. 17, 2007)

(Brown., J) (coming to the same conclusion on the facts nearly

identical to those at bar); cf. Brown v. Greiner, 409 F.3d 523, 534-35 (2nd Cir. 2005).

This Court will explicitly condition the stay on petitioner pursuing state court remedies within 30 days after the stay is entered and returning to federal court within 30 days after state court exhaustion is completed. See Rhines, 544 U.S. at 278.

**CONCLUSION**

Based on the foregoing, the Court will stay the petition and hold it in abeyance while petitioner exhausts his Blakely claim.

/s/Katharine S. Hayden
**Katharine S. Hayden
United States District Judge**

Dated: March 21, 2007